**Susan Mary NORRIS, Plaintiff,**

**v.**

**William W. WIRTZ, individually and as executor of the Estate of Arthur M. Wirtz; Wirtz Corporation, Wirtz Realty Corporation, Wirtz Insurance Agency, Inc.; Consolidated Enterprises, Inc.; Chicago Stadium Corporation; and First Security Trust & Savings Bank, Defendants.**

**No. 84 C 1527.**

United States District Court, N.D. Illinois, E.D.

Jan. 4, 1989.

## MEMORANDUM OPINION
## AND ORDER

MAROVICH, District Judge.

This lawsuit is one of several brought by a beneficiary against her trustee and various businesses he owns or controls, for alleged self-dealing. Plaintiff Susan Mary Norris contends that defendant William A. Wirtz abused his position as trustee under her parents' testamentary trusts. The pending amended complaint contains seven counts. Three counts allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1961, *et seq.* ("RICO"); one count alleges securities fraud under Section 78j(b) and Section 10(b) of the Securities Exchange Act of 1934; one count alleges state law claims of

breach of fiduciary duty; and the final two counts are a shareholder derivative suit on behalf of two closely held corporations for breach of fiduciary duty and a suit for liquidation of those corporations under Section 12.55(f) of the Illinois Business Corporation Act. Now pending before the court is defendants' motion to dismiss the amended complaint or, in the alternative, for summary judgment. For the reasons explained below, the court denies defendants' motion.

## I. *Factual Background*

This case is the second of two formerly consolidated cases wherein Susan Norris seeks recovery for various alleged misdeeds of William A. Wirtz.

Many of the facts underlying both suits are set forth in the appellate opinions of *Norris v. Wirtz*, 719 F.2d 256, 257–58 (7th Cir.1983), *cert. denied*, 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 185 (1984), and *Norris v. Wirtz*, 818 F.2d 1329 (7th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987). For purposes of clarity and completeness, the court will summarize the relevant facts. As befits the posture of this case, the facts alleged in plaintiff's complaint are taken as true, and all reasonable inferences will be construed in plaintiff's favor.

Plaintiff Susan Mary Norris (hereafter "Susan") is a member of the Norris family which acquired a substantial fortune in sports, real estate, banking and liquor interests. These included from time to time the Madison Square Garden in New York City, athletic stadiums and arenas in Chicago, Detroit, St. Louis, and elsewhere, hockey teams, including the Detroit Red Wings and the Chicago Black Hawks, promotion of boxing contests, including professional world championships, the Ice Follies, racing stables, and office buildings, residential buildings and commercial and hotel properties and theatres. Many of these interests were owned or controlled together with the Wirtz family.

In February, 1966, plaintiff's father, James Norris, died, leaving his wife Mary Norris and defendant William Wirtz (James Norris's business partner) (hereafter "William") as co-executors of his will. Under the terms of that will, any property which remained after the closing of the estate was to be divided into two trusts, one for the benefit of Mary Norris (Trust A) and the other for the benefit of Susan (Trust B). William was appointed trustee and defendant Arthur Wirtz, William's father, was named successor trustee. The estate closed in 1977.

Mary Norris, Susan's mother, died in 1976, exercising a power of appointment to divide the corpus of Trust A into four further trusts, one of which was for Susan's benefit. William Wirtz also acted as executor of the Mary Norris Estate, which was closed in 1983. William continues to act as the sole trustee of Trust B and of the four trusts created from Trust A.

Plaintiff alleges in this suit and several others filed in both state and federal court that William has been less than an ideal trustee. Most relevant to the instant motions is a 1980 federal securities fraud suit. In case No. 80 C 6836, Susan claimed that William and others defrauded her in connection with a 1967 and 1968 sale of Jim Norris Estate stock in three closely held corporations—Arena Bowl, Inc., Judge & Dolph, Ltd., and St. Louis, Arena Corp. The suit is based on William's sale of the Jim Norris Estate's shares in the three corporations back to those corporations as a repurchase and redemption of shares. Because defendant Wirtz Corporation, owned by the Wirtz family, held a controlling interest in each of the three corporations, there was a potential for self-dealing in the transaction on the part of William. Before the stock transactions were routinely approved by the probate court, William went to plaintiff several times when she was eighteen and nineteen years old and secured her approval of the stock sales. The suit alleges that in the course of inducing Susan's uninformed approval of the sales, William made false statements concerning the value and fair price of the stocks.

According to the docket sheet, the in-

stant suit was filed on February 17, 1984.[1] This suit, No. 84 C 1527, was consolidated for discovery with the related 1980 securities fraud suit, No. 80 C 6836. While the suits were consolidated, the defendants brought several motions which are the subject of opinions written by Judge Getzendanner. Judge Getzendanner declined to dismiss the cases and ultimately denied the summary judgment motions. Thereafter, the suits were separated for trial. The 1980 securities suit went first. A jury entered a verdict for Susan, finding that William had defrauded Susan in the 1967 and 1968 transactions.

On appeal, the Seventh Circuit, two to one, reversed the jury's verdict on statute of limitations grounds. *Norris v. Wirtz*, 818 F.2d 1329 (7th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987). The court found that the appropriate statute of limitations for Rule 10(b)–5 actions was three years. Susan was entitled under tolling rules to postpone the running of the statute because of equitable considerations, including fraudulent concealment and the fact that William was her trustee. However, the court found that since 1975 Susan had been dealing with William at arms length through independent attorneys and that by November, 1977, Susan knew enough to recognize that the method of valuation used in 1967 and 1968 was flawed. Therefore, the court held that the lawsuit filed December 24, 1980 was untimely. That opinion plays a significant role in defendants' present motions and will be referred to herein as "*Norris II.*"

## II. *Allegations in This Lawsuit*

Plaintiff alleges in this suit that William Wirtz used his position as trustee to carry out a deliberate and ongoing scheme to convert to his own use major assets of the Norris estates and trusts. The allegedly fraudulent conduct spans almost twenty years and involves many separate allegedly fraudulent transactions. The first of these

suspect transactions is the 1967 and 1968 securities frauds which formed the basis of the 1980 10(b)5 action. In addition, plaintiff questions a 1981 sale of stock in First Security Trust & Savings Bank ("First Security transaction"); a 1975–1979 alleged fraud involving stock in Medical Investment Corporation ("Medicor fraud"); a 1977 transaction involving the purchase of DeLuca Importing Company and Nevada Beverage Company ("DeLuca/Nevada fraud"); a 1984–85 sale of the Rathjen Division of Consolidated Enterprises, a California liquor wholesaler ("Rathjen fraud"); a 1979 sale of the 666 Lake Shore Drive building in Chicago ("666 Lake Shore Drive fraud"); a 1984–1988 acquisition of a beer distribution business in Minnesota ("Griggs Beer fraud"); and other various allegedly illegal conduct.

The complaint consists of seven counts. The first three counts allege violations of RICO Sections 1962(a) (Count I), 1962(b) (Count II), and 1962(c) (Count III). The fourth count alleges a securities fraud under Rule 10(b)5 of the Securities and Exchange Commission based on the First Security transaction. Count V alleges a common law breach of fiduciary duty. The count alleges that William breached his duties by preventing two Norris/Wirtz-owned corporations—Consolidated Enterprises and Chicago Stadium Corporation—from paying dividends from available funds. Count VI is a shareholder's derivative suit on behalf of the two aforementioned corporations. Finally, Count VII seeks dissolution of the same two corporations under the Illinois Business Corporations Act.

The defendants move to dismiss or, in the alternative, for summary judgment on a multitude of grounds. After careful consideration, the court rejects each of the defendants' contentions. The court addresses each of the contentions in the order in which they were raised.

---

**1.** Unless the parties come forward with substantial contrary evidence, the court assumes that the docket sheet contains the correct filing date

for this suit. Thus, defendants' claim that Count IV is barred by the statute of limitations is rejected.

III. *Analysis*

A. RICO Counts: Statute of Limitations

Defendants' first argument is that the RICO counts are untimely as they were filed more than four years after the RICO cause of action accrued. The issue here is when the RICO cause of action accrued.

The Seventh Circuit has not yet ruled on the standard to be applied in determining when a RICO claim accrues. Among district courts and other circuits which have addressed the issue, two RICO accrual tests have emerged. The first test—the "last predicate act" standard—holds that the limitations period commences to run on a RICO claim from the date of the last predicate act comprising the RICO pattern. Plaintiff herein urges the court to adopt this rule and points out that a substantial number of judges in this district have adopted the approach. *See Citicorp Savings of Illinois v. Streit*, No. 84 C. 7471 (N.D.Ill. April 3, 1987) [1987 WL 9318] (McGarr, J.); *Carlstead v. Holiday Inns, Inc.*, No. 86 C 1927 (N.D.Ill. March 26, 1987) [1987 WL 9024] (Plunkett, J.); *County of Cook v. Berger*, 648 F.Supp. 433, 433–35 (N.D.Ill.1986) (Kocoras, J.); *Griggs v. Robinson Securities*, No. 84 C 4679 (N.D.Ill. May 9, 1985) [1985 WL 1163] (Grady, J.); *Newman v. Wanland*, 651 F.Supp. 20, 22 (N.D.Ill.1986) (Williams, J.) (We disagree with defendants that this case adopts a "discovery" rule).

The other standard—the "discovery" rule—holds that the statute of limitations begins to run at the time a plaintiff knows or has reason to know of her injury. The parties here cite several interpretations of the discovery rule. Some cases hold that the RICO cause of action for each injury accrues when a plaintiff knows or should know of that particular injury. Thus a plaintiff may only be able to recover for RICO injures the plaintiff knew of or should have known about within the last four years. Although plaintiff may not recover for earlier injuries, evidence of those injuries may be used to prove the RICO violation. *See e.g., Gutfreund v. Christoph*, 658 F.Supp. 1378, 1391–92 (N.D.Ill.1987) (Shadur, J.); *Wabash Pub. Co. v. Dermer*, 650 F.Supp. 212, 217 (N.D. Ill.1986) (Rovner, J.).

The parties urge two other interpretations of the discovery rule. The plaintiff argues that the discovery rule means that the statute of limitations begins to run when a plaintiff knew of or should have known of the *last* RICO injury. This standard differs slightly from the "last predicate act" standard. The defendants cite virtually the same cases for the interpretation that the statute of limitations begins to run when the plaintiff first learns of the purported pattern of racketeering on which her suit is based. Such a rule seems wholly unjust for, as plaintiff points out, "[a]ccording to defendants' argument, they are forever immunized from RICO liability for every fraud which they have perpetrated, or may in the future perpetrate upon Susan Norris because she did not discover soon enough that she had been defrauded in three transactions which occurred in 1967 and 1968." *See* Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss or for Summary Judgment at p. 33.

This court need not concern itself with the proper application of the "discovery" rule because this court adopts the "last predicate act" standard. The court agrees with Judge Kocoras that:

> Given the federal interest in providing relief to those who are injured by a course of continual and related conduct, it would be incongruous to bar, on statute of limitations grounds, recovery for predicate acts taking place outside the limitations period and permitting recovery only for those within the limitations period. The principles of conspiracy law ought clearly to apply, and so long as any of the predicate acts occur within the limitations period, a defendant should have to answer for all of his related and continual acts of harm.

*County of Cook v. Berger, supra*, 648 F.Supp. at 435.

In addition, the court finds that the last predicate act standard is compatible with

the RICO statutory scheme. The RICO statute defines a pattern of racketeering activity as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). If RICO could not reach back *at least* ten years to include prior predicate acts, then Section 1961(5) would be unnecessary. *See Citicorp Savings of Illinois v. Streit, supra,* slip op. at 2, 3.

Applying the last predicate act standard to this case, it is clear that Susan's RICO claims are timely. Several of the predicate acts alleged in Susan's complaint took place within four years of the filing of this suit. Indeed, Susan alleges that William continues to commit predicate acts to this day.

### B. RICO Counts: Res Judicata

 Defendants' second argument is that the doctrine of *res judicata* applies here to bar claims which could have been raised in the 1980 securities fraud case. The doctrine of *res judicata* bars a later suit based on claims that were made or could have been made in an earlier suit, provided certain prerequisites are met. Generally stated, those prerequisites are:
> (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.

*Spiegel v. Continental Illinois Nat. Bank,* 790 F.2d 638, 645 (7th Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). However, even if all three *res judicata* requirements are met in this case as to at least some of the predicate acts alleged, the court finds that a further attribute of *res judicata* is not met here and therefore *res judicata* does not bar the RICO counts.[2]

As previously mentioned, *res judicata* bars both claims actually made and claims

that could have been made. The issue is whether the RICO claims brought in this suit could have been brought in the earlier 1980 suit. The 1980 suit was premised on three fraudulent stock transactions which took place in 1967 and 1968. Those same three transactions are three of the alleged predicate acts in the RICO claims in this case. However, even knowing about those three transactions in 1980, plaintiff could not have brought a RICO claim based on them. The RICO statute requires at least one predicate act *after* the 1970 effective date. 18 U.S.C. § 1961(5). Reading the pleadings in the light most favorable to plaintiff, there is reason to believe that plaintiff did not know of any post–1970 predicate acts in 1980 when she filed her securities fraud suit. Further, any question of what plaintiff knew or didn't know in 1980 is a question of fact which should be decided at trial. Because plaintiff may not have been able to bring her RICO claim in the earlier suit, this later suit is not barred as a matter of law by *res judicata. See County of Cook v. Midcon Corp.,* 574 F.Supp. 902 (N.D.Ill.1983) (Refusing to apply *res judicata* to bar a RICO suit based on same set of operative facts where RICO claim could not have been raised in prior suit.)

Defendants argue that the Seventh Circuit in *Norris II* has already determined that plaintiff should have known about post–1970 fraudulent schemes by 1980. Defendants take a more expansive view of the Seventh Circuit's opinion in the 1980 case than this court does. The issue before the court in *Norris II* was whether Susan should have known about the three fraudulent securities transactions prior to December 24, 1977. Although the court ruled that Susan should have known enough to file the securities suit in November, 1977, the court made no findings about any other allegedly illegal transactions. *See Norris v. Wirtz, supra,* 818 F.2d at 1335–36.

---

**2.** The defendants also argue that the doctrine of *res judicata* bars Counts V, VI, and VII, the breach of fiduciary duty, derivative and dissolution claims. The parties virtually ignored this issue in their briefs relying on the RICO counts' *res judicata* arguments. If defendants sincerely want to raise this argument, the court would be interested in receiving a brief of five pages or fewer on the issue. Plaintiff would, of course, be allowed to respond.

Where defendants seek such a drastic measure as barring an entire suit, the factual findings they argue as given must be more clearly set out.

### C. RICO: Tangible Losses Versus Intangible Rights

Defendants' next objection can be dealt with briefly. Plaintiff alleges that her RICO claims, in part, "arise out of a scheme, plan and course of conduct engaged in by the Wirtzes to defraud, and which did defraud, plaintiff of her heritage ..." Am.Cplt. ¶ 27. Plaintiff also alleges that "William Wirtz has deprived plaintiff and other Estate and trust beneficiaries and the Norris–Wirtz Corporations of the honest and faithful performance of his duties." Am.Cplt. ¶ 116. Defendants contend that plaintiff's use of the phrases "loss of her heritage" and "deprivation of honest and faithful performance of William Wirtz's duties as trustee and corporate officer" render plaintiff's claims not actionable under RICO because, pursuant to *McNally v. U.S.*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), a RICO claim does not extend to the loss of "intangible rights."

■ The court agrees with plaintiff that defendants' argument is based on a mischaracterization of plaintiff's claims. The court finds it very plausible that the term "her heritage" is simply a summary statement describing alleged misappropriation of assets in plaintiff's parents' estates. These alleged misappropriations are enumerated in detail in the complaint. Thus, "heritage" refers to money and property, tangible losses which are compensable under RICO and *McNally*.

Likewise, allegations about William Wirtz's failure to give plaintiff the honest and faithful performance of his fiduciary duties could be a characterization of the *means* by which Wirtz allegedly defrauded plaintiff, not a description of a RICO injury. Accordingly, plaintiff's claims do not fail under *McNally*.

---

**3.** Defendants also argue that Counts V, VI, and VII fail to meet the requirements of Fed.R.Civ.P. 9(b). Because those counts incorporate by ref-

### D. Particularity of RICO Allegations

Defendants' next contention is that plaintiff's amended complaint fails to plead the mail fraud schemes forming the basis for the RICO claims with particularity, as required by Federal Rule of Civil Procedure 9(b). Defendants attack the specificity of plaintiff's RICO allegations in three ways: (1) some of the allegations of mail and wire fraud fail to allege those offenses with particularity; (2) two paragraphs are inadequate because they are alleged on information and belief; and (3) the RICO "enterprise" allegations are inadequate.[3]

#### 1. *Predicate Act Allegations*

First, defendants recite that in pleading mail fraud and wire fraud as RICO predicate acts, plaintiff must set forth the "time, place, particular contents of the false representations, the identity of the party making the misrepresentation and the consequences of the misrepresentation." Defendants' Opening Memorandum at p. 35 *quoting UNR Industries, Inc. v. Continental Ins. Co.*, 623 F.Supp. 1319, 1328–29 (N.D.Ill.1985). Defendants argue that several of plaintiff's allegation paragraphs fail to meet this standard.

■ The primary purpose of Federal Rule of Civil Procedure 9(b)'s particularity requirement is to ensure that a defendant in a fraud suit is on notice of the particular acts which are challenged as fraudulent. Judge Getzendanner already ruled on a motion to dismiss plaintiff's original complaint that plaintiff had adequately pled mail and wire fraud. *See* Mem.Op. April 26, 1985. Further, this court required plaintiff to file a detailed "RICO Case Statement." In that statement, plaintiff sets forth the type of detail defendants are demanding for several of the predicate acts. *See* Plaintiff's RICO Case Statement, pp. 14–18. The information provided there includes names, dates, and contents of allegedly fraudulent mail and wire communications. The court finds that defendants have adequate notice

erence the paragraphs of the RICO complaint, this court's ruling that the RICO allegations are sufficient also applies to Counts V, VI, and VII.

of the fraudulent schemes with which they are charged.

## 2. *Allegations on Information and Belief*

Allegations on information and belief are permissible. *Perington Wholesale, Inc. v. Burger King Corp.,* 631 F.2d 1369, 1372–73 (10th Cir.1979). The court sees no reason to strike two admittedly non-central allegations on this basis.

### 3. *Enterprise Allegations*

Since the enactment of the RICO statute, courts have sought to confine RICO cases to situations with which the RICO statute was intended to deal. The RICO statute must be given the effect of its language and courts carefully evaluate whether a plaintiff's allegations fall within the unique contours of the statute. One of the linchpins of RICO is the concept of "enterprise." RICO defines an enterprise to include "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals *associated in fact* although not a legal entity." RICO § 1961(4) (emphasis added). Defendants here argue that plaintiff has failed to plead an "association in fact." The court agrees.

Plaintiff's enterprise allegations in each of her three RICO counts are substantially the same:

> During the period February, 1966 to July 23, 1983 in the case of Arthur Wirtz, and to the present, in the case of the other defendants, defendants were employed by or associated with the following enterprises as defined in 18 U.S.C. § 1961(4), ...; the Estate of James D. Norris, Trusts A and B thereunder, the Estate of Mary Norris, the various trusts thereunder, Spring Hill Farms, Inc., St. Louis Arena Corp., Arena Bowl, Inc., Judge & Dolph, Ltd., First Security Trust & Savings Bank, Medicor, Consolidated Enterprises, Inc. (and subsidiaries), Chicago Stadium Corp., *and the associations of some or all of the foregoing.*

Am.Cplt. Count III ¶ 29 p. 55 (emphasis added).

■ In *U.S. v. Neapolitan,* 791 F.2d 489, 499 (7th Cir.), *cert. denied,* 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986) (emphasis added), the Seventh Circuit held:

> that Congress intended the phrase 'a group of individuals associated in fact although not a legal entity,' as used in its definition of the term 'enterprise' in section 1961(4), to encompass only an association having an ascertainable structure which exists for the purpose of maintaining operations directed toward an economic goal *that has an existence that can be defined apart from the commission of the predicate acts* constituting the 'pattern of racketeering activity.'

Plaintiff's conclusory 'enterprise' allegation does not even state which entities comprise the association or associations in fact, let alone provide any information from which the court could determine whether such association has an existence that can be defined apart from the predicate acts. Accordingly, the enterprise in fact allegations are insufficient and are stricken from the complaint.

Plaintiff's allegations regarding the other enterprises are sufficient because they are all legal entities and thus fall within the definition of "enterprise."

### E. Nexus Between Use of the Mails and the Purported Fraud

■ Next, relying on *U.S. v. Staszcuk,* 502 F.2d 875 (7th Cir.1974) and *U.S. v. Brickey,* 296 F.Supp. 742 (E.D.Ark.1969), defendants contend that plaintiff fails to allege that the mailings at issue here are for the purpose of executing a scheme or artifice. Defendants made the same objection to the original complaint. In denying defendants' previous motion to dismiss, Judge Getzendanner discussed both *Staszcuk* and *Brickey* in detail as they relate to this case. Judge Getzendanner concluded that although some of the allegations were insufficient, "[p]laintiff's other allegations [ ] sufficiently relate to her claims of an overall scheme to satisfy the 'in furtherance' requirement." Nos. 80 C 6836, 84 C 1527, Mem.Op. at 22 (June 26, 1985) [1985 WL 1862]. As the amended

**1330**

complaint contains most of the same allegations of the original complaint, with additions, Judge Getzendanner's ruling is the law of the case.

### F. First Security Bank Fraud as a Predicate Act

■ Defendants next contend that the First Security claim under Rule 10(b)–5 fails to allege reasonable reliance. The gist of the First Security allegations is that from 1977 through 1980, William Wirtz advised plaintiff that the Mary Norris Estate needed to sell stock the estate held in First Security for liquidity purposes. William allegedly failed to disclose to Susan many material facts concerning the sale. William also allegedly misled Susan about the value of the shares. Defendants argue that the First Security transaction is so similar to the three other stock frauds that took place in 1967–68 that Susan could not have reasonably relied on William's representations. Defendants bootstrap from the Seventh Circuit's *Norris II* opinion finding that Susan should have known that the 1967–68 transactions were fraudulent by 1977. Defendants urge that "[p]laintiff cannot close her eyes to a known risk and then claim that she justifiably relied on defendants' representations." Memorandum in Support at p. 45.

First, at this stage of the case, the court takes as true plaintiff's allegation that she relied on William's statements and omissions. Plaintiff has pled *no* facts inconsistent with her claim of reliance: statements by defendants were not contradicted by truthful information Susan obtained elsewhere; the alleged lies and omissions significantly affected the "total mix" of information in Susan's possession; the missing information was much more accessible to William than to Susan. *See Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 530 (7th Cir.1985).

Further, the court will not find "no reliance" in 1977–1980 as a matter of law based on the Seventh Circuit opinion finding that Susan should have known about the 1967–68 frauds in 1977. The court finds this argument unpersuasive, considering that the case defendants rely most heavily on states that:

> [n]either this nor (to our knowledge) any other appellate court has relieved a lying securities defendant of liability on the ground that the other party failed to nose out the truth.

*Teamsters Local 282 Pension Trust Fund v. Angelos, supra,* 762 F.2d at 529. Defendants are not necessarily relieved of liability even if plaintiff should have known William had previously defrauded her.

### G. Usurpation of Griggs Beer Corporate Opportunity Predicate Act

■ Defendants seek a judgment that they did not usurp any corporate opportunity from Griggs, Cooper & Co., Inc.—a Norris–Wirtz corporation—when they formed Griggs Beer Distributors, Inc. As defendants rely on citations to authorities outside the record, the court treats this argument as a motion for summary judgment. Defendants rely almost exclusively on the testimony of Mr. Max E. Mohler, chief financial officer of defendant corporations. Mr. Mohler's testimony does not irrebutably establish that the transactions at issue did not in some way violate the fiduciary duties owed to Susan. Plaintiff disputes many of Mr. Mohler's factual assertions and argues that, because discovery is not complete, summary judgment is inappropriate at this time. The court finds that there are factual disputes regarding the nature of the Griggs Beer transaction; thus summary judgment is denied.

### H. Laches

■ Finally, defendants argue that all seven counts of plaintiff's complaint are barred by the equitable doctrine of laches. The question whether the doctrine of laches should be invoked is committed to the sound discretion of the district court. The court declines to invoke the doctrine in this case—he who seeks equity must do so with clean hands.

### IV. *Conclusion*

Defendants' motion is denied. Certain above-specified portions of the complaint

are stricken. The parties are requested to brief the Counts V, VI, and VII *res judicata* issue.