**Douglas B. FIRESTONE (90–4114/4120); Amy Firestone Del Valle (90–4114/4120); Russell A. Firestone III (90–4115); Jeffrey Firestone (90–4116/4117); David M. Firestone, Jr. (90–4116/4117); Mark A. Firestone (90–4118); and Leigh E. Firestone (90–4119), Plaintiffs–Appellants,**

v.

**Daniel M. GALBREATH, et al., Defendants–Appellees.**

Nos. 90–4114 to 90–4120.

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1992.

Decided Sept. 23, 1992.

Rehearing Denied Oct. 21, 1992.

---

Douglas B. Firestone, pro se.

Amy Firestone del Valle, pro se.

Jeffrey Firestone, pro se.

David M. Firestone, Jr., pro se.

Joan E. O'Dell (argued and briefed), Washington, D.C., Richard S. Wayne (argued), Strauss & Troy, Cincinnati, Ohio, Neil B. Jagolinzer, Christiansen, Jacknin & Tuthill, West Palm Beach, Fla., John W. Clark, Jr., Clark, Wiley & Goodall, Dallas, Tex., for plaintiffs-appellants.

Robert M. Kincaid, Jr. (briefed), Baker & Hostetler, Columbus, David J. Young (briefed), Squire, Sanders & Dempsey, Craig Denmead (argued and briefed), Christiane Ward Schmenk, Denmead, Blackburn & Willard, Columbus, Ohio, Philip R. Forlenza, Patterson, Belknap, Webb & Tyler, New York City, for defendants-appellees.

Before: MILBURN and NORRIS, Circuit Judges; and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

The underlying conflict in this litigation is a will contest between competing factions of a wealthy family.

Plaintiffs Douglas B. Firestone, Amy Firestone del Valle, Russell A. Firestone III, Jeffrey B. Firestone, David M. Firestone Jr., Mark Firestone and Leigh Firestone appeal from the district court's dismissal of their seventy-four state tort and federal RICO claims against Daniel Galbreath and others. The district court dismissed the bulk of the claims on the grounds that the plaintiffs lacked standing to assert the claims of their grandmother's estate and family trust. 747 F.Supp. 1556. For the reasons set forth in this opinion we affirm.

In 1925 decedent Dorothy Bryan Firestone Galbreath married Russell Allen Firestone, an heir to the Firestone tire fortune. Dorothy and Russell had two sons, who in turn had ten children. These children became the plaintiffs in this lawsuit and all but three of them now appeal. In 1955, four years after the death of Russell Firestone, Dorothy married John Galbreath. Like her first husband, John Galbreath had a substantial fortune which he achieved and maintained as a real estate developer, and through which he enjoyed ownership of the Darby Dan horse farms and the Pittsburgh Pirates. Dorothy shared her new husband's enthusiasm for breeding and racing thoroughbreds.

Twenty years later, her health failing, Dorothy executed her will on October 31, 1978. In this will, she bequeathed specific assets to her children, her husband, and her stepchildren. She also left a heirloom brooch to her granddaughter Amy. The residuary estate she left to a Family Trust, created on that same day. The sole beneficiaries of the Family Trust were her grandchildren. She named her stepson, Daniel Galbreath, as executor of her estate and trustee of the Family Trust.

During her lifetime, Dorothy Galbreath funded the Family Trust only nominally. Any residuary assets in Dorothy's decedent estate was bequeathed to the Family Trust

and from there into individual trusts for her generically described "then living grandchildren." The Trust also provided for appointment of a new trustee by majority vote of the Family Trust beneficiaries.

Dorothy died on February 24, 1986, having suffered for the last years of her life from Herpes Zoster of the brain. On June 26, 1986, two of Dorothy's grandchildren, Douglas Firestone and Amy Firestone del Valle, filed a will contest action claiming Dorothy Galbreath had been incompetent at the time she made her will. On January 19, 1990, the two voluntarily dismissed the action when it appeared it might interfere with their case here.

John Galbreath died shortly after Dorothy, on July 20, 1988. Daniel Galbreath also serves as executor of his estate. On September 22, 1988, Douglas and Amy sent Daniel a letter. In part, that letter stated:

> We are writing to you as Trustee of [the Family Trust] as well as Executor of Mrs. Galbreath's Estate to demand that you, in your dual capacities and in accordance with law, make formal presentation of the claims of [Amy and Douglas], of the Family Trust, and of the Estate of Dorothy B. Galbreath ... upon the Estate of your father, John W. Galbreath.

Essentially, Amy and Douglas made the same charges in that letter that they make here, namely that the Galbreaths had been looting Dorothy Galbreath's estate as she lay dying. They demanded only a presentation of these claims to John Galbreath's estate. Daniel Galbreath asserts that he presented the claims to the estate, and has offered to resign as executor of Dorothy's estate if the Grandchildren should demand a suit against the Galbreaths, or request his resignation.

Rather than following either of these courses (a direct demand that the executor file suit or a request for Daniel's resignation), Douglas Firestone and Amy Firestone del Valle began this action by filing a seventy-four count complaint in the Southern District of New York in December of 1988. The complaint contained numerous charges of fraud, tort claims and RICO violations involved in transfers of two pieces of property Dorothy Galbreath owned in New York, her rights in various horses, and all financial transactions she made with the Galbreaths after her marriage in 1955 to John Galbreath. Named as defendants were Daniel Galbreath individually, and as trustee and executor, John Galbreath's Estate and various Galbreath business interests, Joan Galbreath Phillips, James W. Phillips (Joan's husband), John Phillips (Joan's son), Lizanne Galbreath (Daniel's daughter) (collectively, the "Galbreath Defendants"), Bricker & Eckler (a law firm), Bricker & Eckler partners John Eckler, David Cummins, John Phillips (still Joan's son), and Charles H. Waterman III (the "Bricker Defendants"), and finally the accounting firm of Bolon, Hart & Buehler, Inc. ("Bolon, Hart"). Originally, the complaint also named the eight other grandchildren as defendants, but they have since realigned as plaintiffs. Interestingly, no child of Dorothy Firestone has ever been named in or sought intervention in this litigation.

On September 28, 1989, the District Court in New York transferred the case to the Southern District of Ohio. Various motions to dismiss had been filed before the transfer, and on December 1, 1989, the defendants renewed these motions. On July 30, 1990, the district court dismissed the majority of the claims with leave to amend within thirty days to plead a demand. The Grandchildren never made an amendment, and on November 13, 1990 the district court dismissed all claims, largely on the question of standing. Douglas B. Firestone, Amy Firestone del Valle, Russell A. Firestone III, Jeffrey B. Firestone, David M. Firestone Jr., Mark Firestone and Leigh Firestone (the "Grandchildren") all filed timely notices of appeal.

I.

The Firestone grandchildren raise claims on behalf of themselves individually, the Family Trust, and Dorothy Galbreath's estate. Initially we note the general and well-settled rule that federal courts lack probate jurisdiction and cannot administer a decedent's estate. *Markham v. Allen,*

326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946). Federal courts, however, do have jurisdiction:

> to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court.

*Id.* at 494, 66 S.Ct. at 337. The Grandchildren bring this suit to recover assets they allege belong to the Dorothy Galbreath Estate and to themselves and their Trust and on this basis assert that a resolution of these claims in federal court will neither interfere with the probate proceedings, nor does it involve the federal court in the administration of the Estate. The district court dismissed all of the claims of the Trust and the Estate on the grounds that the Grandchildren lacked standing to pursue those claims.

Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue and with the real party in interest principle. 6A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1542 (1990).[1] According to Wright, Miller and Kane, "the real party in interest principle is a means to identify the person who possesses the right sought to be enforced [and] capacity is conceived to be a party's personal right to litigate in a federal court." *Id.* Standing involves determination whether the plaintiff can show an injury in fact traceable to the conduct of the defendant. *See Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). According to the complaint, the Estate could trace a direct injury to the alleged acts of the defendants. The question is whether these plaintiffs can sue on behalf of the Estate. This would seem to be a question of capacity rather than standing or real party in interest. *See Glickstein v. Sun Bank/Miami N.A.,* 922 F.2d 666, 670 (11th Cir.1991).

■ Under Federal Rule of Civil Procedure 17(b) the law of the state in which the district court sits governs a party's capacity.[2] Thus, as did the district court, we look to the law of Ohio to determine the Grandchildren's ability to bring this suit. We review the district court's determination of questions of state law *de novo. Salve Regina College v. Russell,* —— U.S. ——, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

■ The district court correctly stated Ohio's general rule granting the executor, not the heirs, the right to bring the estate's causes of action. *See McBride v. Vance,* 73 Ohio St. 258, 76 N.E. 938 (1906). Further, Ohio does not permit heirs to bring these claims for their own, individual, benefit. *Id.* Therefore, the Grandchildren would have the ability to pursue this lawsuit on behalf of the Estate only if they fit within some exception to this general rule.

■ Ohio does allow heirs to bring a suit on behalf of the estate if the executor has refused or neglected to comply with their demand that the estate institute a cause of action. *Ex parte Bevan,* 126 Ohio St. 126, 184 N.E. 393 *aff'd in part, appeal dismissed in part,* 289 U.S. 459, 53 S.Ct. 661, 77 L.Ed. 1316 (1933). The Grandchildren argue in this court that their September 1988 letter to Daniel Galbreath constituted a demand. Their complaint belies this claim. The complaint specifically states that the Grandchildren have not made any demand to bring suit on the executor of Dorothy's Estate:

---

1. This is certainly understandable. Judge Edward A. Tamm has observed that "standing is the most amorphous concept in the entire domain of the public law." *Scanwell Laboratories Inc. v. Shaffer,* 424 F.2d 859, 861 (D.C.Cir.1970), cited in *Shaw–Henderson, Inc. v. Schneider,* 335 F.Supp. 1203, 1212 (W.D.Mich.), *aff'd* 453 F.2d 748 (6th Cir.1971).

2. Federal Rule of Civil Procedure 17(b) provides in relevant part:

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile.... In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held....

Because Daniel Galbreath has refused to make effective presentation of claims upon the John Galbreath Estate and because he is himself a primary defendant in this Complaint, it would be futile for plaintiffs to make further demand upon him to pursue the claims set forth herein, and *plaintiffs have accordingly not done so.*

Complaint ¶ 58 (emphasis added). Consequently, the Grandchildren lack capacity to pursue any claim on behalf of Dorothy's Estate.[3]

■ The Grandchildren also advanced claims on behalf of the Family Trust. Like an estate, generally only the trustee may bring an action on behalf of a trust. *Saxton v. Seiberling,* 48 Ohio St. 554, 29 N.E. 179 (1891). Again, the law makes an exception where the trustee has refused or neglected to bring a demanded action. *Id.* And again, the district court found that the Grandchildren failed to make a demand, and further that no futility exception to the demand exception existed.

■ The Grandchildren offer two reasons why a demand on the trustee is not necessary. According to Scott on Trusts § 294.1 (4th ed. 1989), as quoted by the district court, "The beneficiary can maintain a suit in equity against the tortfeasor only if the trustee improperly refuses or neglects to bring an action...." They argue that Daniel Galbreath "improperly neglect[ed] to bring an action" when he failed to bring this suit, having knowledge of the claims, but without any demand having been made upon him. This argument is a transparent exercise in semantics by the plaintiffs. Both terms, "refuse" and "neglect," presuppose a demand, which the trustee either will not or forgets to bring.

Without a demand having been made upon him, Daniel Galbreath did neither.

■ The Grandchildren's second argument states that they did not need to make a demand on Daniel Galbreath as trustee because he was in collusion with the remainder of the Galbreath family to deprive the Grandchildren of their rightful inheritance. When a trustee conspires to steal trust property, the beneficiaries may sue the third parties directly and join the trustee as a party. *See Porter v. Doppes,* 12 Ohio App. 391, 396 (1920). This is what the Grandchildren argue they did here.

■ This theory of the Grandchildren's presumes that Daniel Galbreath took property from the Family Trust. As stated in the complaint, the Galbreaths stole houses, horses and cash from Dorothy years before her death in order to keep the property from passing through the will to the Family Trust. Therefore, the Grandchildren must be asserting that the Trust had an interest in the property before Dorothy's death based solely on the residuary interest gained through her Will.

To this end the Grandchildren say the Trust had a vested right in the property because of Dorothy's alleged incompetency. They reason that once Dorothy became incompetent she became unable to change her Will, and that the legacies vested upon her incompetency. Despite two fifty page briefs (which flaunted the spirit, if not the letter, of this court's rules), the Grandchildren offer no legal authority to support their position that they had vested rights in her property before Dorothy's death. In fact, as in most states, Ohio law grants no enforceable rights to potential takers under a will before the testator's death.[4] *Corron*

---

3. We also reject the Grandchildren's unsupported argument that Ohio recognizes a futility requirement. Further, we do not agree that any demand here would have been futile. Although Daniel Galbreath as executor may not have been able to sue Daniel Galbreath as individual, he did state on the record that he would resign to permit the Estate to file suit. The Grandchildren never made any such request.

4. In contrast, beneficiaries of a valid inter vivos trust have a vested interest in the trust at the

time of its creation. *First Nat'l Bank of Cincinnati v. Tenney,* 165 Ohio St. 513, 60 O.O. 481, 138 N.E.2d 15 (1956). So, the Grandchildren had a vested interest in the Family Trust during Dorothy's lifetime. However, during this time there was no property in it save a nominal deposit of cash.

We also note that by the terms of the Trust, only beneficiaries living at the time of the testator's death would be entitled to the receipt of funds.

*v. Corron,* 40 Ohio St.3d 75, 531 N.E.2d 708, 711 (1988); *Cleveland Trust Co. v. White,* 134 Ohio St. 1, 11 O.O. 377, 15 N.E.2d 627, 630 (1938) ("a will ... has no effect until the testator's death and vests no interests in the beneficiaries until the happening of that event"). Since the Trust had no interest in any of the property at the time it was transferred, Daniel Galbreath could not have breached his fiduciary duty to the Trust. Consequently, the Grandchildren's claim does not fall within the exception which allows beneficiaries to bring suit against untrustworthy trustees on behalf of the trust. We therefore find that the Grandchildren lack capacity to bring any of these claims on behalf of the Family Trust, and affirm the district court's dismissal of those claims.

## II.

 The district court also dismissed a number of other claims in the Grandchildren's names based on their lack of standing. The court dismissed the single RICO claim against all of the defendants on grounds that the Grandchildren lacked standing to bring an individual RICO claim because they had not suffered a direct injury, because they had failed to state a claim, and finally because RICO was unconstitutional both as applied and as written.

The Grandchildren employ flawed logic in their insistence that an "actual monetary loss" equates to a "direct injury." The Supreme Court recently explained the direct injury requirement of 18 U.S.C. § 1964(c), the civil RICO statute. *Holmes v. Securities Investor Protection Corp.,* — U.S. —, —, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). The Court held that RICO contains a proximate cause requirement mirroring that of the Sherman and Clayton Acts. This requirement forces the plaintiff to demonstrate a direct relation between the injury suffered and the alleged injurious conduct. Thus, the concept of direct injury refers to the relationship between the injury and the defen-

dants' actions, not the plaintiffs' pocketbooks.[5]

For example, our court has held that a shareholder lacks standing to bring a suit where the alleged injury is diminution or destruction of the value of the stock due to acts aimed at a corporation. *Gaff v. FDIC,* 814 F.2d 311 (6th Cir.1987); *Warren v. Manufacturer's Nat'l Bank,* 759 F.2d 542 (6th Cir.1985). In these cases, the shareholder's injury is only indirect because the decrease in the value of the corporation precipitates the drop in the value of. the stock. The corporation, on the other hand, suffers the direct injury in the decreased value of its corporate assets.

The relationship between the Grandchildren's alleged injury and the injurious conduct here parallels that of the injured stockholders. The Grandchildren allege that by stealing from their grandmother during her lifetime, the defendants decreased the size of Dorothy Galbreath's estate, and consequently the size of their inheritance. This is only an indirect injury because any harm to the Grandchildren flows merely from the misfortunes allegedly visited upon Dorothy Galbreath by the defendants. *See Holmes,* — U.S. at —, 112 S.Ct. at 1318. The estate suffered the direct harm; it, not the Family Trust, lost the property. Consequently, the Grandchildren lack standing to bring an individual RICO claim, and the district court correctly dismissed it.

 Since we find that the Grandchildren lacked standing to bring a RICO claim, the other inherent weaknesses of that claim are moot. In reference to the constitutionality of the RICO statute itself, we note only the words of the Supreme Court: "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable." *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985) *quoting Spector Motor Service,*

---

**5.** Furthermore, the Grandchildren's reliance on *Norris v. Wirtz,* 703 F.Supp. 1322 (N.D.Ill.1989) for their assertion of direct injury is misplaced for the simple reason that *Norris* does not even discuss standing or direct injury.

*Inc. v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944). Deciding constitutional issues only after considering and rejecting every nonconstitutional ground for the decision is a "fundamental rule of judicial restraint." *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering,* 467 U.S. 138, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984). The district court's correct holding that plaintiffs failed to plead adequate RICO claims makes it unnecessary and undesirable for us to pass upon the constitutional aspects of that statute and we expressly distance ourselves from the district court's holding in that respect.

■ The court also relied on standing to dismiss two malpractice and gross negligence claims against the accountants, Bolon, Hart. As with most of their complaint, the Grandchildren based their malpractice claim on services performed for Dorothy Galbreath, not themselves. Ohio allows third parties to sue accountants for negligence or malpractice only when the third parties belong to a limited class whose reliance on the accountant's representation is specifically foreseen. *Haddon View Investment Co. v. Coopers & Lybrand,* 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212, 215 (1982). "Reliance" refers to professional reliance: for example, relying on certified audits to decide to invest in a limited partnership. The Grandchildren make no claim that they ever relied on any report prepared for their grandmother for investment purposes. Their allegations that Bolon, Hart conspired with the Galbreaths to cheat their grandmother does not change their reliance on any tax returns or other accounting work. Accordingly, we agree with the district court that the Grandchildren do not have standing on this claim either.

■ Similarly, the district court dismissed the Grandchildren's two malpractice claims against the Bricker defendants for lack of privity. The Grandchildren had claimed that Bricker's work for Dorothy Galbreath in the sale of her Saratoga property to John Galbreath, in the preparation of her will and general maintenance of her estate, and preparation of her tax returns amounted to malpractice. We concede that within a narrow range under Ohio law, the Grandchildren, as third parties, could hold their grandmother's attorneys liable for the attorneys' malpractice if they were in privity with the client or if the attorney acted with malice. *See Scholler v. Scholler,* 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158 (1984).

The district court held that the Grandchildren were not in privity with their grandmother relying on *Simon v. Zipperstein,* 32 Ohio St.3d 74, 512 N.E.2d 636, 638 (1987) (per curiam). In *Simon,* the Ohio Supreme Court found that a potential beneficiary of an estate lacked privity with the testator because he had no vested interest in the estate. Lacking privity, Simon could not maintain a suit against his testator's attorney for negligent preparation of a will, even though the will deprived him of property the testamentary plan intended for him. The court held that the Grandchildren as potential beneficiaries similarly did not have privity.

Three of the Grandchildren, Douglas, Amy and Russell Firestone, claim that the district court erred in its failure to recognize that *Elam v. Hyatt Legal Serv.,* 44 Ohio St.3d 175, 541 N.E.2d 616 (1989), altered the vesting rule in *Simon.* They argue that under *Elam* they are in privity with Dorothy Galbreath and can sue her attorneys. *Elam* held:

> A beneficiary whose interest in an estate is vested is in privity with the fiduciary of the estate, and where such privity exists the attorney for the fiduciary is not immune from liability to the vested beneficiary for damages arising from the attorney's negligent performance.

*Elam,* 541 N.E.2d at 616. In *Elam,* the attorneys had mistakenly issued a deed transferring title in fee simple to the holder of a life estate in the property, thus effectively precluding the rights of holders of the remainder interest. This holding prompted the remaindermen to bring a malpractice suit. The Court distinguished *Simon* on the grounds that the remaindermen's interests had vested, and so they

were in privity with the fiduciary of the estate. *Id.* at 618. The Court added a cryptic footnote, however, noting that the plaintiffs' interests in *Simon* had vested, but maintained sphinx-like silence on the significance of this observation.

The district court stepped into the gap here, distinguishing the cases based on when the third party's interest vested. The plaintiff in *Elam* could maintain a suit because his interest had vested at the time the attorney rendered services, and so the attorney had a duty to him as part of the entire estate. In contrast, the plaintiff's interest in *Simon* vested after the provision of services, and so he could not maintain a suit. Since the Grandchildren question only services Bricker provided to Dorothy Galbreath prior to her demise, and therefore before their interest in her estate vested, the district court held that *Simon* controlled their case.

This is a logical interpretation of Ohio law. The Grandchildren assert that *Elam* changed the vesting rules in Ohio but offer no explanation of what a new rule might be. Indeed, we fail to see any reinterpretation of the vesting requirement in *Elam.* Thus, we conclude that the district court correctly found a lack of privity between the Grandchildren and Dorothy Galbreath for services performed before her death.

▇▇▇ A plaintiff who lacks privity with an attorney's client can still maintain a suit under "special circumstances," namely an allegation of "fraud, bad faith, collusion or other malicious conduct." *Simon,* 512 N.E.2d at 638. The district court held that "the attorney must act with intent to defraud the third party or must act with malice or bad faith in regard to the third party" to fit within this exception. The district court found that the Grandchildren had not pled any special circumstances in their complaint.

The Grandchildren claim this to be error because they pled a "plethora of factual allegations of collusion, bad faith, malice, incapacity and fraud." We do not find that. Weeding through the complaint, our search reveals that the Grandchildren alleged that the Bricker defendants assisted the Galbreaths in their efforts to defraud Dorothy Galbreath. The complaint is void of any allegations that the Bricker defendants acted out of malice towards the Grandchildren, or that the Grandchildren entered into the Bricker defendants' calculations in any way.[6] The complaint does allege Bricker malice towards Dorothy Galbreath, but Dorothy Galbreath and her Grandchildren are separate entities, much as they may seek to deny this fact. Therefore, we agree with the district court that the complaint makes inadequate allegation of malice towards the Grandchildren to overcome the privity problem.

### III.

Finally, the Grandchildren also appeal from the dismissal of their numerous common law fraud claims. The district court dismissed this claim for failure to state a claim upon which relief may be granted. The Grandchildren argue that this was error because the mental incapacity of Dorothy Galbreath suffices as an allegation of constructive fraud. The flaw in this argument is that the district court did not dismiss the fraud claims on behalf of the individuals for that reason. The court agreed with the Grandchildren that they had adequately alleged constructive fraud by the defendants against Dorothy Galbreath, and said it would allow the claims by the estate if they had been brought by someone with capacity to bring them. The court simply did not believe that the plaintiffs had alleged that the defendants had constructively defrauded them. Therefore, this asserted claim of error completely misses the target.

---

6. The only mention of the Grandchildren in the complaint we could find states:

> [t]he firm permitted [the invalid transfers both before and after the onset of her incapacity] and they failed to advise Dorothy Galbreath, the Family Trust or the beneficiaries thereof that such transfers were invalid and contrary to Dorothy Galbreath's intended testamentary plan of providing primarily for her grandchildren.

Any malice in this statement would seem to be aimed at Dorothy Galbreath.

Finally, the Grandchildren appeal the dismissal of their claims that the defendants tortiously interfered with their expected inheritance. We reserve ruling on the propriety of the district court's action on those claims pending the outcome of our order certifying questions to the Supreme Court of Ohio about the existence of the cause of action.

For purposes of avoiding the necessity of filing any petition for *certiorari* prematurely with concern to the issues herein decided, we expressly declare that this opinion is not final and no mandate shall enter thereon until further direction of the court, presumably upon receipt and consideration of any action by the Supreme Court of Ohio upon the certified question.

Having fully considered all other allegations of error and finding them lacking in merit, for the reasons stated above we AFFIRM the district court's dismissal of all other claims.