Jamie Kress REGAN, Appellant–Plaintiff,

v.

Anthony P. UEBELHOR and Christopher T. Uebelhor as Co–Personal Representatives of the Estate of Paul Allen Uebelhor and Arthur C. Nordhoff, Jr., Appellees–Defendants.

No. 19A01–9707–CV–219.

Court of Appeals of Indiana.

Jan. 29, 1998.

are derived from, and thus hinge upon the viability of, her specific allegations of misconduct, namely: 1) interest in an automobile dealership from the estate; and 2) the allegedly improper sale of Grandfather's the allegedly improper loans of money from the trust at a below-market rate of interest. Therefore, we restate and consolidate Granddaughter's concerns into a discussion of these two issues.

### FACTS

The facts in the light most favorable to the nonmovant Granddaughter reveal that Grandfather and Uncle (who were father and son) were 50–50 partners in an automobile dealership known as Uebelhor & Son. Grandfather died testate in 1977. In his will, Grandfather named Uncle as 1) the Executor of the will, 2) the Trustee of a trust established under the will, and 3) a Beneficiary of that trust. In his will, Grandfather also gave Uncle the exclusive right to purchase Grandfather's interest in the dealership from the estate. Uncle, as executor, petitioned the probate court for authority to purchase Grandfather's ½ interest in the dealership from the estate. Uncle obtained and filed consents to the transaction from Grandfather's widow, Esther Uebelhor (Granddaughter's grandmother) [Grandmother], and Grandfather's daughter, Patricia Uebelhor Kress, (Granddaughter's mother) [Mother]. Later in 1977, the probate court approved the sale and Uncle purchased Grandfather's interest in the dealership from the estate.

The trust established in Grandfather's will named Grandmother as beneficiary during her lifetime. The relevant provision of the trust reads as follows:

> The trustee *shall distribute* to or on behalf of my wife during her lifetime *all income* and so much of the principal of the Trust as shall be necessary to provide my said wife with expenses of health, education, support or mode of living enjoyed by our family at the time of my death.

R. at 248 (Emphasis added). The trust provided that, at Grandmother's death, $10,-

Thomas A. Deal, Speedway, for Appellant–Plaintiff.

Steve Barber, Barber, Hamilton & Shoulders, Evansville, Stanley C. Fickle, Barnes & Thornburg, Indianapolis, for Appellees–Defendants Anthony P. Uebelhor and Christopher T. Uebelhor as Co–Personal Representatives of the Estate of Paul Allen Uebelhor.

Danny E. Glass, James E. Marchand, Fine & Hatfield, Evansville, for Appellee–Defendant Arthur C. Nordhoff, Jr.

### OPINION

BAKER, Judge.

Jamie Kress Regan [Granddaughter] appeals the dismissal of her lawsuit against her uncle, Paul Allen Uebelhor [Uncle][1] and Uncle's lawyer, Arthur C. Nordhoff [Lawyer], based on Granddaughter's allegations that Uncle had breached fiduciary duties owed to Granddaughter as the contingent remainderman of the testamentary trust established by her grandfather, Theodore A. Uebelhor [Grandfather], who died in 1977. Granddaughter's claims against Uncle and Lawyer

1. Uncle died on October 24, 1997. The Co–Personal Representatives of Uncle's estate have

been substituted as parties.

000.00 would be paid to a granddaughter who is not involved in the present litigation. The trust then provided that one-half of the balance of the Trust was to be distributed to Uncle. The remaining one-half interest was to be held by Uncle, as trustee, in trust for Mother. At Mother's death, any funds remaining in the trust held on Mother's behalf were to be distributed to her children, including Granddaughter. Granddaughter was not specifically named in the trust.

In 1986, Grandfather's estate was closed and the testamentary trust was funded. In 1987, the probate court entered an order approving the distribution filed by Uncle as executor and discharging Uncle as executor of Grandfather's estate.

Grandmother died in 1993, having survived Mother who died in 1991. At Grandmother's death, Granddaughter was the sole remainderman of Grandfather's trust. Although Granddaughter received two checks from the Trust in December of 1993,[2] she asserts that she first learned of the trust and her interest therein in March of 1994. In April of 1994, the trust funds were distributed to Uncle and Granddaughter who received $240,765.24 each, representing their respective ½ interests.

On December 28, 1995, Granddaughter filed the present lawsuit against Uncle alleging that, as trustee of Grandfather's trust, Uncle had breached fiduciary duties owed to Granddaughter as a contingent remainderman. Specifically, Granddaughter asserted that the price Uncle paid to purchase the ½ interest in the automobile dealership from Grandfather's estate was below fair market value. Granddaughter also asserted that Uncle borrowed money from the estate, and then later from the trust, at a below-market rate of interest. Granddaughter asserted that these actions constituted a conversion of trust assets entitling her to treble damages under Ind.Code § 34–4–30–1 (Civil damages for crimes against property). Granddaughter named Lawyer as a defendant alleging that, as the trustee's lawyer, Lawyer had similarly breached fiduciary duties owed to Granddaughter in facilitating Uncle's alleged misconduct. The trial court dismissed Granddaughter's complaint and this appeal

ensued. Additional facts are supplied as necessary.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

▬ A complaint is not subject to dismissal unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Bentz Metal Products Co., Inc. v. Stephans,* 657 N.E.2d 1245, 1247 (Ind. Ct.App.1995). The allegations of the complaint are taken as true and the plaintiff is entitled to all reasonable inferences which may be drawn therefrom. *Id.* On review of a ruling on a motion to dismiss, we apply essentially the same standard as the trial court. *Id.*

### I. Purchase of Grandfather's Interest in the Dealership

▬ Granddaughter asserts that her cause of action did not accrue until March of 1994 when she first learned of the trust. Therefore, she argues, her complaint filed in late 1995 was timely under the authority of *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 562 (Ind.1992) (Claims for breach of trust are subject to two year statute of limitations). On the other hand, Uncle and Lawyer assert that Granddaughter's claim is a collateral attack upon the probate court's adjudications, and as such, was time-barred, at the latest, in 1988, one year after the estate was closed.

▬ A decree in final settlement of a decedent's estate is a final judgment which is binding upon all interested parties and cannot be collaterally attacked more than one year after judgment is rendered. *Apple v. Kile,* 457 N.E.2d 254, 258 (Ind.Ct.App.1983). Several statutes are relevant in determining whether Granddaughter was an interested party bound by the final settlement of Grandfather's estate. Indiana Code § 29–1–1–21 provides:

> For illegality, fraud or mistake, upon application filed within one (1) year after the discharge of the personal representative upon final settlement, the court may

---

**2.** Granddaughter's lawsuit was filed more than

two years after she received these distributions.

vacate or modify its orders, judgments and decrees or grant a rehearing therein.

Indiana Code § 29–1–17–13 reads:

Upon the filing of a supplemental report of distribution together with receipts or other evidence satisfactory to the court that distribution has been made as ordered in the final decree, the discharge so obtained shall operate as a release from the duties of personal representative and shall operate as a bar to any suit including suits by persons under disability, against the personal representative and his sureties except suits which are commenced within one (1) year from the date of the discharge and are based solely upon alleged mistake, fraud or wilful misconduct on the part of the personal representative.

Indiana Code § 29–1–17–2(d) reads:

The decree of final distribution shall be a conclusive determination of the persons who are the successors in interest to the estate of the decedent and of the extent and character of their interest therein, subject only to the right of appeal and the right to reopen the decree. It shall operate as the final adjudication of the transfer of the right, title and interest of the decedent to the distributees therein designated . . .

Similarly, Indiana Code § 30–4–6–10 reads as follows:

Any adjudication involving the interests of persons represented by a personal representative shall be lawful and binding upon all interested persons, whether born or unborn, whether notified or not notified, and whether represented or not, provided, those interested persons are of the same class or have interests similar to the predominant interests of any person so notified or represented.

"Personal representative," as used in this chapter, includes an executor of a decedent's estate. I.C. § 30–4–1–2(10).

Granddaughter argues that the probate statutes do not operate to bar her claim because her lawsuit is against Uncle, *as trustee*, and not against Uncle, *as executor*. Similarly, Granddaughter argues that I.C. § 30–4–6–10 does not operate to bind her to the probate court's adjudications because she was not represented by a personal represen-

tative, but was instead represented by Uncle, as trustee. A plain reading of the statute has lead us to the opposite conclusion.

Granddaughter's interest in the trust as a contingent remainderman was derivative of Grandmother's and Mother's interests, and thus was similar to the predominant interests of persons notified and represented by Uncle serving as the executor or personal representative. Grandmother and Mother had notice of, and gave their express consents to, the sale of the dealership from Grandfather's estate. Under the circumstances, I.C. § 30–4–6–10 operates to bind Granddaughter to the probate adjudications "whether born or unborn, whether notified or not notified, and whether represented or not." Accordingly, Granddaughter's assertion that her claim was not time-barred due to her lack of knowledge of her interest in the trust has no merit. The probate court expressly approved the sale in 1977 and approved the distribution and closed the estate in 1987. Granddaughter's complaint is a collateral attack upon these adjudications. Therefore, the trial court correctly dismissed this portion of Granddaughter's complaint.

### II. Borrowing at Below Market Interest Rate

■ Over the years, Uncle borrowed money from the estate, and then later from the trust, at an interest rate of 6% which Granddaughter asserts was far below the market rate. Granddaughter asserts that this practice constituted a breach of the fiduciary duty owed to her because the trust remained dormant and did not grow in value over the years. Granddaughter suggests that had Uncle managed the assets appropriately, income would have accumulated over the years and a greater amount would have been available for distribution to her at the trust's termination. The trial court dismissed this portion of Granddaughter's complaint finding that she lacked standing to raise a complaint regarding the income earned from the trust assets.

■ The doctrine of standing focuses on whether the complaining party is the proper person to invoke the Court's power. *Schloss v. City of Indianapolis*, 553 N.E.2d 1204,

1206 (Ind.1990). The standing requirement restrains the judiciary to resolving only those controversies in which the complaining party has a demonstrable injury. *Id.* In order to establish standing, a plaintiff must show that he or she has sustained, or was in immediate danger of sustaining, some *direct* injury as a result of the conduct at issue. *Id; Higgins v. Hale,* 476 N.E.2d 95, 101 (Ind.1985). In *Firestone v. Galbreath,* 976 F.2d 279 (6th Cir.1992), the court held that grandchildren lacked standing to sue their grandmother's estate (and its attorney and accountants) where the grandchildren could not show any direct injury to their interests. *Id.* at 285, *remanded for consideration of claim of tortious interference with inheritance,* 25 F.3d 323, 327, *summary judgment entered in favor of defendants,* 895 F.Supp. 917, 928–29 (Possibility of increased inheritance by potential family trust beneficiary was not "reasonably certain" as required to maintain claim of tortious interference with inheritance).

As set out above, the terms of the trust required Uncle to distribute *all* income to Grandmother. Thus, any increased amount of interest income which could have been generated from the trust assets would have been required to have been distributed to Grandmother. Thus, the only person who could have been prejudiced by Uncle's loans at a below-market rate of interest was Grandmother. The principal of the trust could not have been expected to change significantly over the years unless Uncle, within his discretion as trustee, determined to distribute some or all of it to meet Grandmother's needs. Accordingly, the trial court correctly dismissed this portion of Granddaughter's complaint for lack of standing, and, we find no error.

Judgment affirmed.

NAJAM and SULLIVAN, JJ., concur.